UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

      Plaintiff,

v.                    Case No:  2:16-cv-255-FtM-29CM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to
Dismiss or for a More Definite Statement (Doc. #25) filed on July
31, 2017 and Plaintiff's Response in Opposition (Doc. #32) filed
on October 2, 2017. Also before the Court are the parties' cross
motions for summary judgment (Docs. ## 26, 28) and the responses
thereto (Doc. #28, 35). For the reasons set forth below, the
Court grants Defendant's Motion to Dismiss and denies as moot the
motions for summary judgment.

### I.

This case arises out of the 2012 termination of Plaintiff
Edward Lee Gilliam's employment as a police officer at the Fort
Myers Outpatient Clinic (the Clinic) of the Bay Pines Veterans
Administration (Bay Pines VA). On February 27, 2017, Plaintiff -
a Protestant, Caucasian male of Northern European descent - filed

a *pro se* Amended Complaint[1] (Doc. #17) against the United States Department of Veterans Affairs (Defendant or the VA) alleging numerous violations of Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e *et* seq., the Fourth Amendment to the United States Constitution, and 18 U.S.C. § 1001.[2]

As best the Court can gather from the lengthy Amended Complaint and its voluminous attachments,[3] Plaintiff believes that Bay Pines VA Police Chief Robert Shogren (Chief Shogren) and Lieutenant Pete Quimby (Lieutenant Quimby) orchestrated a scheme to sabotage Plaintiff's career at the VA by creating "a disciplinary paper trail against [him]," (Doc. #17, p. 41), which ultimately resulted in termination of Plaintiff's employment. The alleged motive or motives for this scheme are not entirely clear to the Court, but Plaintiff's "prior turbulent relationship" with Lieutenant Quimby" (id. p. 41), Chief Shogren's "corrupt" nature

---

[1] Plaintiff's original Complaint was dismissed for failure to pay the filing fee (Doc. #14), but the Court vacated dismissal and reopened the case upon payment (Doc. #16). Defendant was served with the Amended Complaint on June 6, 2017 (Doc. #24-1).

[2] This statute criminalizes, in relevant part, "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in connection with any governmental matter. 18 U.S.C. § 1001(a)(2).

[3] The Amended Complaint, with attachments, is 216 pages. The Court may consider these attachments in ruling on Defendant's Motion to Dismiss without converting the same into a motion for summary judgment. Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

(id. p. 6), and Plaintiff's extra-marital affair with another Clinic employee, Lizabeth Marsh (Ms. Marsh) (id. pp. 8, 12) seemingly all played a part.[4] According to Plaintiff, other individuals were involved in the scheme, including Jeff Marsh (Mr. Marsh) - Ms. Marsh's then-husband,[5] Sergeant Walter Slam[6] (Sergeant Slam), and Officer Ron Testa (Officer Testa).

Plaintiff claims he made several requests to meet with Chief Shogren to discuss concerns regarding his treatment at the Clinic – particularly related to his relationship with Ms. Marsh - but was continually rebuked. (Id. pp. 16, 18.) On June 15, 2012, Plaintiff filed a request for "informal counseling" with an EEOC Counselor (id. p. 18), and he met with an EEOC representative on July 24, 2012. (Doc. #17-2, p. 18.) On September 13, 2012, EEOC Counselor Kelley Schafer sent Plaintiff a letter informing him that his file was being closed and that he had fifteen (15) days to file a formal complaint. (Doc. #17, p. 18.) Plaintiff did not

---

[4] Ms. Marsh worked as a medical support assistant at the Clinic. (Doc. #17, p. 9.)

[5] Plaintiff claims that Mr. Marsh searched his then-wife's cell phone and photographed explicit text messages she had exchanged with Plaintiff, which Mr. Marsh then provided to Clinic personnel. (Id. p. 16.)

[6] Plaintiff's filings continually refer to Sergeant Slam as "Brad Slam," except for Paragraph 14.H.ii of the Amended Complaint (Doc. #17), which mentions a "Sergeant Walter Slam." It is not clear why Plaintiff calls Sergeant Slam "Brad," but a review of the file leaves the Court confident that the individual at issue is named "Walter Slam." (E.g., Docs. ## 28-22; 28-24, p. 2; 28-30, p. 5.)

do so at that time, but he did attend a mediation session with Chief Shogren on September 14, 2012. (Id. p. 16.)

Mediation was unsuccessful and, on September 19, 2012, Chief Shogren issued Plaintiff a Proposed Removal of Employment letter (the Proposed Removal Letter), which charged the following misconduct: (1) endangering the safety of a supervisor; (2) conduct unbecoming a police officer; (3) failure to follow supervisory instructions; and (4) inappropriate conduct in the workplace. The first charge relates to an incident in June or July 2012 in which Plaintiff allegedly placed Sergeant Slam in a chokehold. (Doc. #17, p. 22.) The second charge deals with a heated argument (a "lover's quarrel") between Plaintiff and Ms. Marsh at the Clinic on April 26, 2012, which was overheard by Officer Testa.[7] (Id. p. 14.) The third charge arises out of Plaintiff's disobeying Lieutenant Quimby's order that Plaintiff have no contact with Ms. Marsh during work hours. (Id.) The fourth charge is based on the allegation that Plaintiff and Ms. Marsh engaged in sexual relations on VA property on or around November 5, 2011.[8] (Id. p. 16.)

Plaintiff submitted a written response to the Proposed Removal Letter and met with Bay Pines VA Director Susanne Klinker (Director Klinker) on October 12, 2012 to discuss the charges.

_____

[7] Officer Testa reported the incident one week later, after which Plaintiff's "VA law enforcement authority" was suspended. (Doc. #17, p. 15.)

[8] The evidentiary basis for this charge was, in large part, the text messages provided by Mr. Marsh.

(Doc. #17-4, pp. 12.)  In a letter dated October 19, 2012, Director Klinker sustained the four charges and terminated Plaintiff's employment, effective October 27, 2012.  (Id. pp. 9-10.)

Plaintiff then filed a "mixed case complaint" with the Merit Systems Protection Board (MSPB) pursuant to 29 C.F.R. § 1614.302(b), alleging discrimination claims under Title VII.[9] (Id. pp. 20, 38.)  The MSPB held a hearing on April 9, 2014 and sustained Plaintiff's termination, finding good cause for the removal and concluding Plaintiff had failed to show discriminatory motives underlying the termination.  (Id. pp. 38-39.)  Plaintiff appealed that decision to the EEOC, which affirmed the MSPB's findings on March 2, 2016.  (Id. p. 39.)  This lawsuit followed. The Court has jurisdiction over Plaintiff's "mixed" case pursuant to 5 U.S.C. § 7703(b)(2).  Perry v. Merit Sys. Prot. Bd., 137 S. Ct. 1975, 1981 (2017); Kloeckner, 568 U.S. at 50.

## II.

According to Plaintiff, the events underlying these charges either never occurred (sex on VA property; the no-contact order) or were overblown (the private "lover's quarrel" with Ms. Marsh; the "playful" chokehold).  He contends that the fact that he was fired and Ms. Marsh – a Hispanic female – was only suspended for

---

[9] A "mixed case" is one in which a federal employee alleges that he was subjected to an adverse "personnel action" that was motivated, at least in part, by discrimination.  Kloeckner v. Solis, 568 U.S. 41, 44 (2012); Sarhan v. Dep't of Justice Fed. Bureau of Prisons, No. 15-13834, --- Fed. App'x ---, 2017 WL 5479450, at *3 (11th Cir. Nov. 15, 2017); 29 C.F.R. § 1614.302.

three days proves that the VA discriminated against him based on his race, national origin, and gender. He also (i) claims that his Fourth Amendment privacy rights were violated when Mr. Marsh searched Ms. Marsh's cell phone and seized her text messages and (ii) believes that, in carrying out the conspiracy to fire him, various individuals at the VA engaged in criminally fraudulent behavior, in violation of 18 U.S.C. § 1001.

Defendant has moved to dismiss Plaintiff's claims. Defendant argues that the Fourth Amendment and Section 1001 claims must be dismissed because the VA, a governmental agency, is protected from suit by the doctrine of sovereign immunity. Defendant also claims that Section 1001 is a criminal statute that provides no private cause of action to a civil litigant. As for Plaintiff's discrimination, harassment, and retaliation claims, Defendant contends that Plaintiff has not alleged the facts necessary to state actionable claims under Title VII.

Shortly after Defendant filed the Motion to Dismiss, Plaintiff filed a four-page document titled "Motion for Summary Judgment," which contends that Plaintiff's claims "can be reasonably established on the evidence already provided in [his] Complaint" (Doc. #26, p. 3), and which also seeks a default on the ground that Defendant should have answered the Amended Complaint, not sought to dismiss it. (See Doc. #32, p. 1.) Defendant, in turn, filed a dual Response in Opposition/Cross Motion for Summary Judgment reiterating its sovereign immunity arguments and

contending that Plaintiff cannot meet the burden of proof required to sustain his Title VII claims.

Because the Court concludes that dismissal of Plaintiff's claims is warranted, and since it is not clear what stage of discovery the parties are in (or if discovery has even begun[10]), the Court will deny as moot the cross motions for summary judgment.

## III.

Federal Rule of Civil Procedure 8(a) governs pleading requirements for complaints and demands a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has interpreted this language as requiring the complaint to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To do so requires "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This plausibility pleading obligation demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a

---

[10] The parties never submitted a Case Management Report and thus the Court did not issue a Case Management Scheduling Order.

defendant's liability fall short of being facially plausible."
(citation omitted)).  Instead, the complaint must contain enough
factual allegations as to the material elements of each claim to
raise the plausible inference that those elements are satisfied,
or, in layman's terms, that the plaintiff has suffered a
redressable harm for which the defendant may be liable.

If the defendant does not believe the allegations show the
plaintiff is legally "entitled to relief," it may move to dismiss
the case under Federal Rule of Civil Procedure 12.  In evaluating
a Rule 12 motion to dismiss, the Court must accept as true all
factual allegations in the complaint and "construe them in the
light most favorable to the plaintiff."  Baloco ex rel. Tapia v.
Drummond Co., 640 F.3d 1338, 1345 (11th Cir. 2011).  However, mere
"[l]egal conclusions without adequate factual support are entitled
to no assumption of truth."  Mamani v. Berzain, 654 F.3d 1148,
1153 (11th Cir. 2011) (citations omitted).

A pleading drafted by a party proceeding *pro se*, like the
Amended Complaint at issue here, is held to a less stringent
standard than one drafted by an attorney, and the Court will
construe the allegations contained therein liberally.  Jones v.
Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).
Nevertheless, "a pro se pleading must suggest (even if inartfully)
that there is at least some factual support for a claim; it is not
enough just to invoke a legal theory devoid of any factual basis."

*Id.* Nor will *pro se* status salvage a complaint that pleads claims over which the court lacks jurisdiction.

Put simply, even a *pro se* complaint must set forth claims the court has the power to resolve and allege facts showing that each cause of action is facially plausible.

**IV.**

A federal court must ensure that it has subject matter jurisdiction over the claims alleged before it may proceed to decide those claims. Santiago-Lugo v. Warden, 785 F.3d 467, 471 (11th Cir. 2015) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–102 (1998)). According to Defendant, the sovereign immunity doctrine strips the court of its subject matter jurisdiction over – and thereby prevents the Court from adjudicating – Plaintiff's Fourth Amendment and 18 U.S.C. § 1001 claims. The Court begins its analysis there.

**A.  Sovereign Immunity**

The doctrine of sovereign immunity presumptively "shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) (citations omitted). Congress has the power to waive this immunity and consent to suit in a particular context, id., but "[s]uch waivers[] . . . must be explicit." Terrell v. United States, 783 F.2d 1562, 1565 (11th Cir. 1986). Where there is no express waiver, a "jurisdictional bar" exists, and a court has no power to proceed against a claim asserted against the Federal Government or one of its agencies.

In re Custom Contractors, LLC, 745 F.3d 1342, 1347 (11th Cir. 2014); see also United States v. Mitchell, 463 U.S. 206, 212 (1983).  The VA is a federal agency and thus enjoys the protection of sovereign immunity.  Com. of Mass. v. U.S. Veterans Admin., 541 F.2d 119, 123 (1st Cir. 1976); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990)

### 1) The Fourth Amendment

Plaintiff's Fourth Amendment claim is based on the allegation that Mr. Marsh unlawfully searched Ms. Marsh's cell phone and seized (by photographing) certain text messages indicating that Plaintiff and Ms. Marsh may have engaged in workplace sexual relations, which in turn formed the basis for the VA's "inappropriate workplace conduct" charge against Plaintiff.

Even assuming Plaintiff's Fourth Amendment claim is otherwise viable,[11] he cannot sue the VA on this ground because Congress has not waived sovereign immunity.  Meyer, 510 U.S. at 486; Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001).  Because the Court lacks jurisdiction over this claim, it is dismissed without

---

[11] Aside from sovereign immunity, Plaintiff likely lacks standing to pursue this claim.  The Fourth Amendment protects against unlawful governmental intrusions on an individual's privacy expectations, not against intrusions by private citizens - like Mr. Marsh.  United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).  Moreover, "Fourth Amendment rights are personal and may not be vicariously asserted. . . . [A] person does not have a reasonable expectation of privacy in another's belongings." Lenz v. Winburn, 51 F.3d 1540, 1549 (11th Cir. 1995).  It was Ms. Marsh's cell phone and thus her privacy interest that was putatively violated, not Plaintiff's.

prejudice.  Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").

### 2)   18 U.S.C. § 1001

Plaintiff believes that, in carrying out the alleged conspiracy to fire him, various individuals at the VA engaged in criminally fraudulent behavior, thereby violating 18 U.S.C. § 1001.  Defendant counters that, again, the Court lacks the power to entertain this claim because Congress has not waived sovereign immunity and further, that this statute is inapplicable in a civil lawsuit.  The Court agrees that 18 U.S.C. § 1001 is a criminal statute that "does not provide a civil cause of action." Lichtenberg v. Sec'y of the Navy, 627 F. App'x 916, 917 (11th Cir. 2015) (per curiam); see also Fed. Sav. & Loan Ins. Corp. v. Reeves, 816 F.2d 130, 137 (4th Cir. 1987); Greenblatt v. Klein, 634 F. App'x 66, 69 (3d Cir. 2015) (per curiam).  Plaintiff's 18 U.S.C. § 1001 claim is dismissed without prejudice.[12]

---

[12] Plaintiff's Motion for Summary Judgment states that "Plaintiff is not seeking criminal violation enforcement but merely to express the severity of corruption used . . . against him in his wrongful termination."  (Doc. #26, p. 2.)  Plaintiff suggests the Court simply read his claim as one of corruption.  (Id.)  Even if the Court could construe the Amended Complaint as asserting a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., the Court would still lack jurisdiction because there is no evidence that "the United States specifically waived its sovereign immunity for [RICO] claim[s]." Lichtenberg, 627 F. App'x at 917; see also Chevron Corp. v. Donziger, 833 F.3d 74, 138 (2d Cir. 2016).

**B. Title VII - Discrimination, Harassment, Retaliation**

That leaves Plaintiff's Title VII claims. Although the Amended Complaint cites only Title VII generally, the Court will proceed under Section 2000e-16, which applies to federal employers. See Canino v. U.S. E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983) (observing that Section 2000e-16 "is the exclusive remedy for charges brought against federal employers including reprisals"); see also 5 U.S.C. § 7703(a)(2). As relevant here, that section mandates that "[a]ll personnel actions affecting employees . . . in executive agencies . . . be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

Before continuing, the Court notes that the language in Section 2000e-16(a) is a bit different from that contained in the anti-discrimination provision pertaining to private employers.[13] The Eleventh Circuit "ha[s] not addressed, in a published opinion,

---

[13] 42 U.S.C. § 2000e-2(a)(1) makes it an "unlawful employment practice . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." This provision has been interpreted as protecting against "the creation or perpetuation of a discriminatory work environment," also known as a "hostile work environment." Vance v. Ball State Univ., 133 S. Ct. 2434, 2440 (2013); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64-67 (1986). Title VII also expressly prohibits private employers from retaliating against an employee "on account of [that] employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2522 (2013) (citing 42 U.S.C. § 2000e-3(a)).

whether § 2000e-2(a) . . . and § 2000e-16(a) are legally equivalent." Putman v. Sec'y, Dep't of Veterans Affairs, 510 F. App'x 827, 829 (11th Cir. 2013) (per curiam). It has, however, noted that "other Circuits have so held" and more than once "assume[d] . . . that the coverage is the same."[14] Id.; Thomas v. Miami Veterans Med. Ctr., 290 F. App'x 317, 319 (11th Cir. 2008) (per curiam) ("[D]espite the differences in language, Title VII places the same restrictions on federal agencies as it does on private employers." (citing Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007))). Accordingly, in addressing the viability of Plaintiff's Title VII claims, the Court proceeds on the presumption that those claims are actionable under Section 2000e-16, as they would be against a private employer under 42 U.S.C. § 2000e-2(a).

As Defendant acknowledges, by allowing employees to file suit after exhausting their administrative remedies, Congress has explicitly waived immunity for Title VII claims asserted against governmental agencies like the VA. See 42 U.S.C. § 2000e-5. But Defendant is also correct that this waiver applies only to claims involving one or more of the five personal attributes set forth in the statute: race, color, religion, sex, or national origin.

---

[14] Moreover, the pre-split Fifth Circuit held that "the 1972 amendments extending the protections of Title VII to federal employees . . . were intended to give federal employees the same rights as private employees," including "bar[ing] reprisals against federal employees who file charges of discrimination." Porter v. Adams, 639 F.2d 273, 278 (5th Cir. 1981). That holding is binding precedent on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Thompson v. McHugh, 388 F. App'x 870, 872 (11th Cir. 2010) (per curiam).  Marital status is not in that list.  Consequently, sovereign immunity shields Defendant from Plaintiff's Title VII claim of marital discrimination.  See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95 (1983); Pinson v. Rumsfeld, 192 F. App'x 811, 815 (11th Cir. 2006) (per curiam).  As such, the Court dismisses that claim without prejudice and proceeds to address the remaining Title VII claims.

### 1.  Discrimination - Disparate Treatment

#### a)  Race, National Origin, and Gender

The Court begins by considering Plaintiff's claim that the VA discriminated against him because of his gender (male), race (Caucasian), and national origin (northern European).

"Employment discrimination claims all require proof of discriminatory intent."  Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1192 (11th Cir. 2016) (citation omitted).  Where no direct evidence of discriminatory intent exists,[15] establishing "a prima facie case for disparate treatment in an employment discrimination case" requires the plaintiff to show that: "(1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) h[is] employer treated similarly situated employees outside of her protected

---

[15] Direct evidence "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination."  Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla., 256 F.3d 1095, 1111 (11th Cir. 2001).

class more favorably than she was treated; and (4) []he was qualified to do the job." Id. (citation omitted); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Relevant here, establishing the third factor typically requires the plaintiff to identify a proper "comparator" – that is, someone who - protected characteristic aside - is "nearly identical" to the plaintiff. Id.; see also Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ("In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the [proposed comparator]."); Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 n.6 (11th Cir.) ("[N]o plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better."), opinion modified by, 151 F.3d 1321 (11th Cir. 1998). "If two employees are not 'similarly situated,' the different application of workplace rules does not constitute illegal discrimination." Lathem v. Dep't of Children & Youth Servs., 172 F.3d 786, 793 (11th Cir. 1999).

According to the Amended Complaint, "proof" of discriminatory intent for Plaintiff's race, national origin, and gender discrimination claims lies in the fact that, whereas he was fired for the affair, Ms. Marsh – a Hispanic woman – was only suspended

for three days.  Defendant argues that these claims must be dismissed because the Amended Complaint, along with the materials Plaintiff attached thereto, leave clear that Ms. Marsh was not "similarly situated" to Plaintiff.  Without an adequate comparator, Defendant continues, it will be impossible for Plaintiff to establish the third element of his prima facie case.

"[A] plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal."  McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 801 n.4 (11th Cir. 2014) (per curiam).  Nonetheless, the claim as pled must still be "facially plausible," that is, it must "allow the court to draw the reasonable inference that [the defendant] [i]s liable for . . . [the] discrimination [charged]."  Id. at 801.  In other words, while the failure to plead a particular discrimination element does not mandate dismissal, it can constitute grounds for dismissal where it is apparent that the plaintiff will never be able to carry his burden of proof on that element.  See Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1254 (11th Cir. 2017).

The Court agrees that, as pled, Plaintiff's race, national origin, and gender discrimination claims are facially implausible because there is no viable comparator.  Plaintiff's sole would-be comparator, Ms. Marsh, had a different job (she was a medical assistant and Plaintiff was a police officer) and worked under different supervision.  (Doc. #17-2, p. 16.)  Moreover, the Amended Complaint leaves clear that, unlike Plaintiff, Ms. Marsh

was never charged with endangering the safety of a supervisor (she was not involved in the altercation between Plaintiff and Sergeant Slam), conduct unbecoming a police officer (she was not a police officer), or failure to follow supervisory instructions (she was not give a no-contact order). Where the proposed comparator works in a different department, has different job duties, answers to a different supervisor, and has fewer disciplinary infractions, then she is categorically not similarly situated "in all relevant aspects" and thus "not a proper comparator." Foster v. Biolife Plasma Servs., LP, 566 F. App'x 808, 812 (11th Cir. 2014) (per curiam); see also Bessemer, 137 F.3d at 1312-13 (no "similarity" where proposed comparators committed one act of misconduct and plaintiff committed two); Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis.").

There are no allegations in the Amended Complaint from which the Court may infer that another potential comparator exists. Accordingly, as currently pled, Plaintiff's race, national origin, and gender disparate treatment discrimination claims are not plausible on their face. See Bessemer, 137 F.3d at 1311 ("If [a] Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, [his] case must fail because the burden is on [him] to establish [a] prima facie case."). At the same time – and particularly in light of

Plaintiff's *pro se* status – the Court cannot say that no other adequate comparator exists and thus will dismiss these claims without prejudice. See Evans, 850 F.3d at 1254 ("[A] *pro se* litigant generally should be permitted to amend her complaint, [except where] it would be futile.").

### b) Religion

Plaintiff's religious discrimination claim is a bit different. The Amended Complaint avers that Plaintiff, who identifies as Protestant, "was stigmatized for allegedly committing adultery and fornication." (Doc. #17, p. 47.) In support thereof, Plaintiff cites a conversation in which Sergeant Slam stated "he was no longer interested in having theological conversations with the Plaintiff, as [they] had done in the past, because the Plaintiff was now divorced and was in sin with his relationship with Lizabeth Marsh." (Doc. #17, p. 46.) Plaintiff also points to his pre-termination hearing with Director Klinker, during which she corrected Plaintiff's miscategorization of Mr. Marsh as Ms. Marsh's "ex-husband" (which he was not yet) "in a very seething tone." (Id. p. 45.) According to Plaintiff, this illustrated her "religious concern" about his behavior, which in turn motivated her decision to fire him. (Id. p. 45-46.)

Read liberally, Plaintiff's claim appears to be one of discrimination due to religious "nonadherence," rather than an archetypal disparate treatment claim. A religious nonadherence claim, sometimes referred to as a "reverse religious

discrimination" claim, alleges that the failure to conform one's religious beliefs and/or conduct to an employer's pious expectations resulted in an adverse employment action.  See, e.g., Noyes v. Kelly Servs., 488 F.3d 1163, 1168-69 (9th Cir. 2007); Shapolia v. Los Alamos Nat. Lab., 992 F.2d 1033, 1037-38 (10th Cir. 1993); cf. Young v. Sw. Sav. & Loan Ass'n, 509 F.2d 140, 141 (5th Cir. 1975) ("Congress, through Title VII, has provided the courts with a means to preserve religious diversity from forced religious conformity.").

The operative question is whether the Amended Complaint pleads a facially plausible religious nonadherence claim.  A plaintiff alleging religious discrimination usually must establish the same multi-factor prima facie case discussed above.[16]  Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305 (11th Cir. 2002).  However, a number of Circuit Courts of Appeals have employed a more relaxed prima facie standard for nonadherence claims which does not include the "protected class" factor.  Shapolia, 992 F.2d at 1038; Noyes, 488 F.3d at 1168-69.  Specifically,

> in order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, . . . the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some

---

[16] The plaintiff must also "present . . . evidence that the decision-maker knew of his religion" or beliefs.  Lubetsky, 296 F.3d at 1306.

> additional evidence to support the inference
> that the employment actions were taken because
> of a discriminatory motive based upon the
> employee's failure to hold or follow his or
> her employer's religious beliefs.

Shapolia, 992 F.2d at 1038; see Noyes, 488 F.3d at 1168 (finding "instructive" Shapolia's treatment of "non-adherence" religious discrimination claims); see also Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997) ("We agree with our colleagues in the Tenth Circuit that the accommodation framework on which the district court relied has no application when the employee alleges that he was fired because he did not share or follow his employer's religious beliefs." (citing Shapolia, 992 F.2d at 1038)). While the Eleventh Circuit does not appear to have expressly addressed whether a different prima facie standard applies to nonadherence religious discrimination claims, that court has "repeatedly emphasized that the requisite showings that make up a prima facie case are not meant to be rigid or inflexible" and has entertained cases in which "the evidence does not fit neatly into the classic prima facie case formula." Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999) (citations omitted).

Ultimately, whether the Eleventh Circuit would follow the formula laid out in Shapolia or continue to apply the traditional discrimination framework, this Court must conclude that the Amended Complaint does not plead a plausible religious discrimination claim. First, Plaintiff has not alleged he was treated worse than a non-Protestant, and thus he has not pled a

"routine" disparate treatment claim.[17]  Second, while Plaintiff may have been upset by Sergeant Slam's refusal to continue engaging in theological conversations, that refusal unquestionably does not constitute an "adverse employment action" – that is, "a *serious and material* change in the terms, conditions, or privileges of employment."  Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.").  Finally, while Director Klinker's termination of Plaintiff's employment with the VA was, undeniably, an adverse employment action, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, (1998), the "seething tone" she allegedly used when discussing the Marshes' marital status is alone insufficient to permit an inference that she fired Plaintiff because he did not hold or adhere to her religious beliefs.  Plaintiff's religious discrimination claim is dismissed without prejudice.

### 2)  Hostile Work Environment – Religious Harassment

Plaintiff also attempts to assert a Title VII hostile work environment claim based on religious harassment.  "A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation,

---

[17] The Amended Complaint contains no mention of Ms. Marsh's religion, if any.

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993)). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998). Moreover, a "[plaintiff] cannot make actionable ordinary workplace tribulations by turning a 'personal feud' between [him]self and a coworker into a Title VII religiously hostile work environment claim." <u>Alhallaq v. Radha Soami Trading, LLC</u>, 484 F. App'x 293, 296 (11th Cir. 2012) (per curiam).

Even reading the Amended Complaint liberally, the Court can find only one factual allegation supporting Plaintiff's hostile work environment claim: Sergeant Slam's aforementioned refusal to discuss religion with Plaintiff because Plaintiff was divorced and living "in sin."[18] (Doc. #17, p. 46.) Again, while this singular incident may have truly offended Plaintiff, it is not sufficient to allege a facially plausible hostile work environment claim based on religious harassment. See <u>Alhallaq</u>, 484 F. App'x at 296 (affirming dismissal of religious harassment claim brought by

---

[18] As noted above, Plaintiff's "endangering the safety of a supervisor" charge resulted from Sergeant Slam accusing Plaintiff of using a violent chokehold on him, which Plaintiff denies.

Muslim plaintiff who was subjected to constant Christian gospel music, called "dirty," and told to "burn in Hell," since such conduct – "albeit rude and insensitive" – was not "sufficiently severe or pervasive").  Indeed, Sergeant Slam's decision to <u>not</u> discuss religion with Plaintiff seems the very opposite of religious harassment.  The Court dismisses this claim without prejudice.

### 3) Retaliation

Lastly, Plaintiff asserts that a "culture of retaliation" developed after he sought informal counseling with the EEOC on June 15, 2012.  (Doc. #17, p. 19.)  To establish a prima facie case of retaliation under Title VII, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events."  <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006)).  Unsurprisingly, "[t]he filing of an EEOC claim is a 'statutorily protected activity.'"  <u>Burgos v. Napolitano</u>, 330 F. App'x 187, 189 (11th Cir. 2009) (per curiam) (quoting <u>Goldsmith</u>, 513 F.3d at 1277)).

Defendant argues that Plaintiff cannot establish the requisite causal link between his protected activity and the adverse action because (i) the Amended Complaint shows that the investigation resulting in Plaintiff's termination began in April 2012, at least two months *before* Plaintiff ever contacted the EEOC,

and (ii) Plaintiff was fired on October 19, 2012 - more than four months after he contacted the EEOC. The Court agrees.

Where "temporal proximity" is the only evidence of a "causal relation" offered, that proximity must be "very close" to allow an inference of causation. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted); Grier v. Snow, 206 F. App'x 866, 869 (11th Cir. 2006) (per curiam). Four months – even three months - is unquestionably too long. E.g., Breeden, 532 U.S. at 273; Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Importantly, however, the proximity clock begins to run not on the date the plaintiff engages in protected activity, but on the date the decision-maker gains "knowledge of [that] protected activity." Breeden, 532 U.S. at 273; see also Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 778 (11th Cir. 2014) (per curiam) ("A plaintiff establishes a causal connection by showing that the relevant decision-maker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" (quoting Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002))).

The Amended Complaint is silent as to when Director Klinker first learned that Plaintiff had filed an EEO Complaint. In the end, that fact does not matter. Even if she found out shortly before she decided to sustain the charges and terminate Plaintiff's employment with the VA, those charges had indisputably already

been levied against Plaintiff and his removal proposed.[19]  In other words, in deciding to fire Plaintiff, Director Klinker was merely "proceeding along lines previously contemplated." Breeden, 532 U.S. at 1511.  That fact negates any possibility of causality based on temporal proximity. Id.; see also Smith, 565 F. App'x at 779 (no retaliatory causation where employer "had already contemplated disciplining [plaintiff] before she filed her Charge").  Since the Amended Complaint contains no other facts from which the Court may plausibly infer causation,[20] Plaintiff's retaliation claim is dismissed without prejudice.

The Court will afford Plaintiff the opportunity to file a **concise** Second Amended Complaint that fixes the pleading deficiencies discussed herein; claims barred by sovereign immunity

---

[19] The September 19, 2012 Proposed Removal Letter, which was attached to Plaintiff's Amended Complaint (Doc. #17-4, pp. 4-8), was issued more than three months after Plaintiff sought EEOC counseling, thus falling outside the causation proximity window.

[20] The Amended Complaint discusses a 2010 lawsuit filed in the Tampa Division of this District (Case No. 8:10-cv-1482) in which the plaintiffs accused the Bay Pines VA, and specifically Chief Shogren, of "a pattern and practice of retaliation" against individuals who become involved with the EEOC. (Doc. #17, p. 6.) That lawsuit cannot serve as causation evidence here for at least two reasons.  First, and as the Amended Complaint notes, the defendants settled before trial, so there was no merits determination on retaliation.  Second, Plaintiff was not a party to that suit and cannot invoke it as a sword to succeed with issues in his own case. See United States v. Mendoza, 464 U.S. 154, 162 (1984) ("[N]onmutual offensive collateral estoppel simply does not apply against the government in such a way as to preclude relitigation of issues . . . ."); see also Williams v. Osmose Utilities Servs., Inc., No. 04-CV-4109, 2006 WL 2370342, at *3 (W.D. Ark. June 12, 2006) (observing the lack of any federal case applying nonmutual offensive collateral estoppel under Title VII).

should **not** be reasserted.  If Plaintiff chooses to amend, the allegations should be set forth in separate numbered paragraphs, "each limited as far as practicable to a single set of circumstances" – generally one or two sentences.  Fed. R. Civ. P. 10(b).  The Court **strongly** encourages Plaintiff to consult the "Proceeding Without a Lawyer" resources provided at the following website: http://www.flmd.uscourts.gov/pro_se/default.htm.  This site has tips, answers to frequently-asked questions, and sample forms which may help Plaintiff generate a clear, non-repetitive Second Amended Complaint.

Accordingly, it is hereby

**ORDERED:**

1.  Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #25) is **GRANTED**.

**2.**  Plaintiff may file a Second Amended Complaint **on or before Wednesday, December 27, 2017**.

3.  Plaintiff's Motion for Summary Judgment (Doc. #26) and Defendant's Cross-Motion for Summary Judgment (Doc. #28) are **denied without prejudice as moot**.

**DONE and ORDERED** at Fort Myers, Florida, this 12th day of December, 2017.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties and Counsel of Record