UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDWARD LEE GILLIAM,

    Plaintiff,

v.                      Case No: 2:16-cv-255-FtM-29UAM

U.S. DEPARTMENT OF VETERANS
AFFAIRS,

    Defendant.

### OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss (Doc. #67) filed on August 31, 2018. Plaintiff filed a Response (Doc. #73) on September 28, 2018. For the reasons stated below, the motion is granted.

### I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v.

Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

A pleading drafted by a party proceeding *pro se*, like the Third Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally. Jones v.

2

Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). Nevertheless, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Id. Thus, even a *pro se* complaint must allege facts showing that each cause of action asserted is facially plausible.

## II. BACKGROUND

Plaintiff Edward Lee Gilliam (Plaintiff) initiated this case on April 4, 2016. (Doc. #1.) On January 31, 2017, the Court dismissed his Complaint without prejudice for failure to pay the requisite filing fee (Doc. #14), and on February 27, 2017, Plaintiff filed a Second Amended Complaint (Doc. #17).[1] Defendant then moved to dismiss the Second Amended Complaint for failure to state a claim. (Doc. #25.) The Court granted Defendant's motion and dismissed Plaintiff's Second Amended Complaint without prejudice.

On January 1, 2018, Plaintiff filed another Second Amended Complaint, and Defendant once more moved to dismiss the Second Amended Complaint for failure to state a claim. On August 3, 2018, the Court granted Defendant's motion and dismissed Plaintiff's Second Amended Complaint without prejudice. (Doc. #63.) In that

---

[1] Although this complaint was actually Plaintiff's first amended complaint, Plaintiff titled it as a Second Amended Complaint.

Opinion and Order, the Court instructed Plaintiff that it would afford him "**one** last opportunity to file a **concise** Third Amended Complaint" that fixes the pleading deficiencies in his prior complaints.

On August 24, 2018, Plaintiff filed a Third Amended Complaint (Doc. #66), and Defendant has again moved to dismiss the pleading for failure to state a claim.

### III. THIRD AMENDED COMPLAINT

As best the Court can gather from the Third Amended Complaint (Doc. #66): In 2012, Plaintiff - a Protestant, Caucasian male of European descent - worked as a police officer at the the Fort Myers Outpatient Clinic (the Clinic) of the Bay Pines Veterans Administration (Bay Pines VA). Plaintiff believes that Bay Pines VA Police Chief Robert Shogren (Chief Shogren) and Lieutenant Pete Quimby (Lieutenant Quimby) orchestrated a scheme to sabotage Plaintiff's career at the VA by creating a disciplinary "paper trail against [him]," which ultimately resulted in the termination of Plaintiff's employment. (Id. p. 8.) On June 15, 2012, Plaintiff filed a request for "informal counseling" with an EEOC Counselor, and on September 14, 2012, Plaintiff attended a mediation session with Chief Shogren. (Id. pp. 17, 19.)

Mediation was ultimately unsuccessful, and on September 19, 2012, Chief Shogren issued Plaintiff a Proposed Removal of Employment letter (the Proposed Removal Letter), which charged the

4

following misconduct: (1) endangering the safety of a supervisor; (2) conduct unbecoming of a police officer; (3) failure to follow supervisory instructions; and (4) inappropriate conduct in the workplace. (Id. pp. 19, 31-34.) The first charge relates to an incident in June or July 2012 in which Plaintiff allegedly placed Sergeant Slam in a chokehold. (Id. p. 34.) The second charge deals with a heated argument between Plaintiff and Ms. Marsh at the Clinic on April 26, 2012, which was overheard by Officer Ron Testa. (Id. p. 33.) The third charge arises out of Plaintiff's disobeying Lieutenant Quimby's order that Plaintiff have no contact with Ms. Marsh during work hours. (Id. p. 32.) The fourth charge is based on the allegation that Plaintiff and Ms. Marsh engaged in sexual relations on VA property. (Id. p. 31.)

On October 12, 2012, Plaintiff met with Bay Pines VA Director Susanne Klinker (Director Klinker) to discuss the charges in the Proposed Removal Letter. (Id. p. 20.) Director Klinker ultimately upheld the charges and terminated Plaintiff's employment on October 27, 2012. (Id. p. 19.) This lawsuit followed.

## IV. MOTION TO DISMISS

Plaintiff asserts claims against Defendant for numerous violations of Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[2] Defendant now moves to dismiss Plaintiff's Third

---

[2] Plaintiff also asserts a claim for violation of his Fourth Amendment rights. In its previous Opinion and Order granting

Amended Complaint. Defendant argues that Plaintiff has not alleged facts necessary to state actionable claims under Title VII. The Court agrees.

**A. Title VII Principles**

Although the Third Amended Complaint cites only Title VII generally, the Court will proceed under Section 2000e-16, which applies to federal employers. See Canino v. U.S. E.E.O.C., 707 F.2d 468, 472 (11th Cir. 1983) (observing that Section 2000e-16 "is the exclusive remedy for charges brought against federal employers including reprisals"); see also 5 U.S.C. § 7703(a)(2). As relevant here, that section mandates that "[a]ll personnel actions affecting employees . . . in executive agencies . . . be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

As explained in the Court's prior Opinion and Order (Doc. #63, p. 8), the language in Section 2000e-16(a) is a bit different from that contained in Title VII's anti-discrimination provision

---

Defendant's motion to dismiss (Doc. #38), the Court found it lacked subject matter jurisdiction over Plaintiff's Fourth Amendment claim because that claim was barred by sovereign immunity. The Court instructed Plaintiff that such claims barred by sovereign immunity "should **not** be reasserted." (Id. pp. 25-26.) Although Plaintiff now claims that he "is not intentionally disrespecting the [Court's] Order to not further discuss crimes protected by sovereign immunity," (Doc. #66, p. 8), he has clearly disregarded the Court's order and reasserted such claims. Because the Court previously found Plaintiff's Fourth Amendment claim is barred by sovereign immunity, the Court will not again address the merits of that claim here, but will dismiss it with prejudice.

pertaining to private employers. Although the Eleventh Circuit has not explicitly addressed whether Section 2000e-2(a) and Section 2000e-16(a) are legally equivalent, the Eleventh Circuit has "assume[d] . . . that the coverage is the same. <u>Putman v. Sec'y, Dep't of Veterans Affairs</u>, 510 F. App'x 827, 829 (11th Cir. 2013). Thus, in addressing the viability of Plaintiff's Title VII claims, the Court proceeds on the presumption that his claims under Section 2000e-16 are as actionable as they would be against a private employer under 42 U.S.C. § 2000e-2(a).

**B.   Discrimination - Disparate Treatment**

   **1) Race, National Origin, and Gender**

The Court begins by considering Plaintiff's claim that the VA discriminated against him because of his gender (male), race (Caucasian), and national origin (European).

"Employment discrimination claims all require proof of discriminatory intent." <u>Trask v. Sec'y, Dep't of Veterans Affairs</u>, 822 F.3d 1179, 1192 (11th Cir. 2016) (citation omitted). Where no direct evidence of discriminatory intent exists, establishing "a prima facie case for disparate treatment in an employment discrimination case" requires the plaintiff to show that: "(1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) h[is] employer treated similarly situated employees outside of h[is] protected class more favorably than []he was treated; and (4) []he was qualified to do the

7

job." Id. (citation omitted); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish the third factor, a plaintiff must identify a proper "comparator" – that is, someone who is "similarly situated" to the plaintiff "in all material respects." Lewis v. City of Union City, Georgia, ___ F.3d ___, 2019 WL 1285058, at *8 (11th Cir. Mar. 21, 2019)(internal quotation marks omitted). If two employees are not similarly situated in all material respects, the "comparator[] [is] simply too dissimilar to permit a valid inference that invidious discrimination is afoot." Id. at *10.

"[A] plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal." McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 801 n.4 (11th Cir. 2014); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002)(holding that the prima facie standard in employment discrimination cases "is an evidentiary standard, not a pleading requirement"). Nonetheless, the claim must still be "facially plausible," that is, it must "allow the court to draw the reasonable inference that [the defendant] [i]s liable for . . . [the] discrimination [charged]." Id. at 801. Thus, while the failure to plead a particular discrimination element does not mandate dismissal, it can constitute grounds for dismissal where it is apparent that the plaintiff will never be able to carry his burden of proof on that

element.  See Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1254 (11th Cir. 2017).

Plaintiff alleges that "proof" of discriminatory intent for Plaintiff's race, national origin, and gender discrimination claims lies in the fact that he was fired for having an affair with Ms. Marsh, whereas Ms. Marsh – a Hispanic woman – was only suspended for three days.  However, as with Plaintiff's two prior race, national origin, and gender discrimination complaints, the instant claim is facially implausible because Plaintiff has failed to identify a viable comparator.  In fact, Plaintiff appears to concede that Ms. Marsh is not an adequate comparator "because they worked at different departments within the Veteran Affairs," but asserts this "inflexible and t[oo] rigid" rule is "absurd in reasoning" and should not foreclose Plaintiff's claim.  (Doc. #66, p. 10.)  While Plaintiff may take issue with the state of the law, the Court is nonetheless bound by it.  And because Plaintiff has failed to identify an adequate comparator, his race, national origin, and gender discrimination claims are facially implausible. Lewis, ___ F.3d ___, 2019 WL 1285058, at *10; Lathem, 172 F.3d at 793.

**2) Religion**

As to the religious discrimination claim, Plaintiff asserts that he – a Protestant – was stigmatized for committing adultery and behaving "like a heathen according to [Director Klinker's]

9

Catholic faith." (Doc. #66, p. 24.) In support thereof, Plaintiff cites a conversation in which Sergeant Slam stated he no longer wanted to have theological discussions with Plaintiff because Plaintiff "was divorced and living in sin with staff member Liz Marsh . . . ." (Id. p. 28.) In further support of his religious discrimination claim, Plaintiff alleges that Sergeant Slam hid Plaintiff's car keys and locked Plaintiff out of his office. (Id. p. 26.) Plaintiff also points to his pre-termination hearing with Director Klinker, during which she corrected Plaintiff's miscategorization of Mr. Marsh as Ms. Marsh's "ex-husband" (which he was not yet) in an "emphatic seething tone" while looking at Plaintiff with "a piercing glare . . . ." (Id. p. 27.) According to Plaintiff, this demonstrated that her attitude towards Plaintiff and her decision to terminate Plaintiff's employment were religiously motivated.

Plaintiff's claim is one of discrimination due to religious "nonadherence," rather than a typical disparate treatment claim. A religious nonadherence claim alleges that the failure to conform one's religious beliefs and/or conduct to an employer's pious expectations resulted in an adverse employment action. See e.g. Noyes v. Kelly Servs., 488 F.3d 1163, 1168-69 (9th Cir. 2007); Shapolia v. Los Alamos Nat. Lab., 992 F.2d 1033, 1037-38 (10th Cir. 1993); cf. Young v. Sw. Sav. & Loan Ass'n, 509 F.2d 140, 141 (5th Cir. 1975) ("Congress, through Title VII, has provided the

courts with a means to preserve religious diversity from forced religious conformity.").

A plaintiff alleging religious discrimination usually must establish the same multi-factor prima facie case discussed *supra*.[3] Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305 (11th Cir. 2002). However, several Circuit Courts of Appeals have employed a more relaxed prima facie standard for nonadherence claims. Shapolia, 992 F.2d at 1038; Noyes, 488 F.3d at 1168-69. Under this standard,

> in order to establish a prima facie case in actions where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors, . . . the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon the employee's failure to hold or follow his or her employer's religious beliefs.

Shapolia, 992 F.2d at 1038; see Noyes, 488 F.3d at 1168 (finding "instructive" Shapolia's treatment of "non-adherence" religious discrimination claims).

Regardless of which prima facie standard the Court applies, the Third Amended Complaint does not plead a plausible religious

---

[3] The plaintiff must also "present . . . evidence that the decision-maker knew of his religion" or beliefs. Lubetsky, 296 F.3d at 1306.

11

discrimination claim. First, Plaintiff has not alleged that he was treated worse than a non-Protestant, and thus has not pled a "routine" disparate treatment claim.[4] Second, as the Court noted in its previous Opinion and Order (Doc. #63, p. 16), while Plaintiff may have been upset by Sergeant Slam's refusal to continue engaging in theological conversations, that refusal does not constitute an "adverse employment action" - that is, "a *serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.").

Moreover, Sergeant Slam's alleged hiding of Plaintiff's keys and locking Plaintiff out of his office is insufficient to support an inference that Sergeant Slam's actions "were taken because of a discriminatory motive" based upon Plaintiff's nonadherence. Shapolia, 992 F.2d at 1038. And while Director Klinker's termination of Plaintiff's employment with the VA was certainly an adverse employment action, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, (1998), her "piercing glare" and the "emphatic seething tone" she allegedly used when discussing the Marshes'

---

[4] The Third Amended Complaint contains no mention of Ms. Marsh's religion, if any.

marital status is insufficient to permit an inference that she fired Plaintiff because he did not hold or adhere to her religious beliefs.

**C.   Hostile Work Environment – Religious Harassment**

Plaintiff also asserts a Title VII hostile work environment claim based on religious harassment. "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (quotation and citation omitted). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)(internal quotation omitted). A "[plaintiff] cannot make actionable ordinary workplace tribulations by turning a 'personal feud' between [him]self and a coworker into a Title VII religiously hostile work environment claim." Alhallaq v. Radha Soami Trading, LLC, 484 F. App'x 293, 296 (11th Cir. 2012).

Even reading the Third Amended Complaint liberally, the Court can find only one factual allegation[5] supporting Plaintiff's

---

[5] In support of his hostile work environment claim, Plaintiff also asserts that he was forced to undergo investigation, "thwarted

13

hostile work environment claim: Sergeant Slam's refusal to discuss religion with Plaintiff because Plaintiff was "divorced and living in sin." (Doc. #66, p. 28.) Again, while this may have truly offended Plaintiff, it is not sufficient to allege a facially plausible hostile work environment claim based on religious harassment. See Alhallaq, 484 F. App'x at 296 (affirming dismissal of religious harassment claim brought by Muslim plaintiff who was subjected to constant Christian gospel music, called "dirty," and told to "burn in Hell," since such conduct – "albeit rude and insensitive" – was not "sufficiently severe or pervasive"). Indeed, Sergeant Slam's decision to *not* discuss religion with Plaintiff seems the very opposite of religious harassment.

**D. Retaliation**

Lastly, Plaintiff asserts that a "culture of retaliation" developed after he sought informal counseling with the EEOC on June 15, 2012. (Doc. #66, p. 30.) Defendant argues that Plaintiff cannot establish the requisite causal link between his protected activity and the adverse employment action. The Court agrees.

To establish a prima facie case of retaliation under Title VII, "a plaintiff must prove that he engaged in statutorily

---

from contacting the EEOC, wrongfully accused of meeting with [his] girlfriend outside breaks and lunches, [and] was told by Detective Tim Torain he would never wear a police badge again." (Doc. #66, p. 28.) Plaintiff, however, alleges no facts plausibly indicating that any of these events were religiously motivated.

protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). The "filing of an EEOC claim is a statutorily protected activity." Burgos v. Napolitano, 330 F. App'x 187, 189 (11th Cir. 2009) (quotation and citation omitted).

Where "temporal proximity" is the only evidence of a "causal relation" offered, that proximity must be "very close" to allow an inference of causation. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citations omitted); Grier v. Snow, 206 F. App'x 866, 869 (11th Cir. 2006). Four months – even three months – is too long. See e.g. Breeden, 532 U.S. at 273; Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Importantly, however, the proximity clock begins to run on the date the decision-maker gains "knowledge of [the] protected activity," not on the date the plaintiff engages in protected activity. Breeden, 532 U.S. at 273; see also Smith v. City of Fort Pierce, Fla., 565 F. App'x 774, 778 (11th Cir. 2014).

The Third Amended Complaint, like the Second Amended Complaint, is unclear as to when Director Klinker first learned that Plaintiff had filed an EEO complaint.[6] In the end, that fact

---

[6] Plaintiff asserts that Director Klinker learned that he filed an EEO complaint in June of 2012, yet he provides a quote in

15

does not matter. Even if she found out shortly before she decided to sustain the charges and terminate Plaintiff's employment with the VA, those charges had indisputably already been levied against Plaintiff and his removal proposed.[7] In other words, in deciding to fire Plaintiff, Director Klinker was merely "proceeding along lines previously contemplated." Breeden, 532 U.S. at 272. That fact negates any possibility of causality based on temporal proximity. Id.; see also Smith, 565 F. App'x at 779 (no retaliatory causation where employer "had already contemplated disciplining [plaintiff] before she filed her Charge"). Since the Third Amended Complaint contains no other facts from which the Court may plausibly infer causation, Plaintiff's retaliation claim is dismissed.

In its previous Opinion and Order (Doc. #63, pp. 21-22), the Court detailed the Second Amended Complaint's deficiencies, provided Plaintiff with specific instructions on how to comply with the Federal Rules, and instructed Plaintiff that the Court would afford him one last opportunity to file a legally sufficient complaint. However, Plaintiff has failed to resolve those

---

which Director Klinker states she "do[es] not recall." (Doc. #66, p. 22.)

[7] The September 19, 2012 Proposed Removal Letter was issued more than three months after Plaintiff sought EEOC counseling, thus falling outside the causation proximity window.

16

deficiencies and has again filed an insufficient pleading. Because permitting Plaintiff another opportunity to file an amended complaint would be futile, the Third Amended Complaint is dismissed with prejudice.  See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)(noting that a district court need not allow further amendments "where amendment would be futile" (citation omitted)).

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #67) is **GRANTED** and the Third Amended Complaint (Doc. #66) is **dismissed with prejudice**.

2. The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this   27th   day of March, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties and Counsel of record